Thank you. All right, we'll start with United States v. Swan, which is case number 22-6132. Counsel, you may proceed. Good morning, and I hope you can hear me okay. Very good. Good morning, Your Honor. I'm Keith Bradley. I'm here representing Mr. Swan, the defendant and appellate in this case. So, Mr. Swan consistently maintained his innocence to his counsel throughout the early part of this case. This is a possession of ammunition case. He consistently said, it was not mine, until a critical moment when his counsel had what counsel described as the come-to-Jesus conversation, in which his counsel said, you know, you are going to be in front of an all-white jury because they're going to call all minorities. Mr. Swan said, well, then I'd like to plead guilty. Counsel said, well, I can't do that because you're innocent. Mr. Swan said, okay. I'd like to focus, if I could, on the facts here that make it this past the standard for a credible assertion of innocence that in line for leg and withdrawing is guilty. Could you first focus on whether this was even a basis for his motion to withdraw his plea? This comes up when counsel testifies, prior counsel testifies at the hearing on the motion to withdraw. He testifies that he showed his client the video, his client reacted to this video, and that he also said, oh, by the way, you're going to have an all-white jury and that any minority members will be called out. And essentially then he says, and that's when the defendant changed his mind after seeing this video and being concerned about, you know, that. But never did he argue, either in his letter or the attorney's motion, that that comment, which he clearly knew was made, was the reason, he said the reason was because he hadn't seen the video and there was delay in showing him this video, blah, blah, blah. And counsel talked about that. So I guess I understand your concern about that statement, but there's nothing to show on the record that that had anything to do with counsel or with defendant's desire to withdraw his plea. Well, I want to unpack your question a little bit, if I could, because I think you're asking two separate things. Okay. One of which is, you know, is this presented, preserved in the motions? And the other is, is it the basis for withdrawing his plea? His motivations for withdrawing his plea are whatever they are. The district court is supposed to go through the seven factors, and this is pertinent to one of those factors, but I'm not suggesting that this is why. Well, his motivations, in order to determine whether there's a fair and just reason, his motivations are what the court is looking to. And he never told the court that this was a motivation. And even after this comes out from counsel, from what I could tell, he didn't put the defendant on the stand, he didn't do anything to have the defendant say, oh, yeah, by the way, that was another reason that I, that was an additional reason that I didn't recite before. There was nothing like that, so we don't have anything from this defendant in the record indicating that this was a reason. Well, I think, so again, I'm going to go back to whether the reason is really the right question, but first let me point you to pieces of record. Okay. So I'm going to be looking towards volume three of the record, page 73. And again, a couple of pages later, it might be page 77, which is where his substitute counsel, in arguing this motion at the hearing, talks about this point. You're right that it doesn't come up in Mr. Swann's initial letter, which I think is understandable because at that point, this is something that his counsel said to him as a privileged communication, he was not comfortable, had he known, he probably, he shouldn't have disclosed that in an open filing. And second, at that point, he probably doesn't even know that it's a problem. He doesn't, I mean, Mr. Swann's not in a position to know. He knows whether an influence or not, though. He does. Why did he plead? He didn't say anything about it. What he said is that his counsel pressured him to plead. Okay. There are various aspects of that pressure. And, you know, as the district court observes, simply saying that the jurors are going to believe the police rather than you, that is probably the accurate prediction of the general matter. That's not the problem. So it's, but, so by the time that the motion gets, you know, the second motion, the formal counsel motion gets filed, I don't know that the substitute counsel knew about this yet because, again, Mr. Swann wouldn't have known that it was a problem. No, I understand that. It comes out at the hearing, at which point the substitute counsel makes this point that it's not just that he was told to plead the jury would believe the police, that it's going to be an all-white jury. That does come out at the hearing. Okay. Mr. Penley, can I follow up on Judge Lawrence's question? And that is on the two passages that you're reciting from David Autry's closing argument on 73 and 77 of Volume 3. He does, as you point out, reference who you think an all-white jury is going to believe. There are two possible scenarios, theoretically, where why Judge Bryant may assume that there would be an all-white jury. One would be that the Western District of Oklahoma is comprised primarily of Caucasians on the voting rolls, on the driver of registration rolls from which a veneer would be selected in the Western District of Oklahoma. A second scenario is that the prosecutors in the U.S. Attorney's Office in the Western District of Oklahoma would violate flowers, and that's certainly a part of Mr. Armenta's testimony. But when he, I think, ably pointed out that there's a threat of preservation and then a threat of, well, Judge Bryant's error in analyzing these factors, why wasn't it reasonable for Judge Bryant in interpreting these two isolated sentences from a closing argument to infer that, well, the Western District of Oklahoma veneer is primarily composed of Caucasians, that those are the people that make up the voting rolls, the registration rolls from which a veneer is selected, as opposed to a veneer that is going to be drained of minorities because prosecutors violate that. So those are two different scenarios. One is perfectly valid. One is invalid. So one observation, first off, is that the standard of review for this particular point is de novo under Marcellino. The standard of review for what's knowing and voluntary is non-abusive discretion. But then my second observation is, if you only had this sentence, who do you think in all likelihood is going to believe, sure, that could be interpreted in several ways, but in the context of what Mr. Armenta told Mr. Swan, which is right here in the testimony, told him that the prosecutor is going to cull the jury of minorities, I don't think it would be reasonable to interpret this sentence in the closing argument as meaning that, because of the demographics of this district. Just to be clear, though, the culled statement was a characterization made by defense in cross-examination, which Mr. Armenta then agreed to? Yes. Correct. That's right. And then there's a second follow-on from that. First, that the jury would cull the minorities, and then that it will be an all-white jury, which immediately follows that, also in cross-examination. Mr. Armenta fully signed on to that characterization. So, given that, and I should be clear, I'm not suggesting that this is what the prosecutors actually do in this district, but the point is that Mr. Swan was told that's what they do, and I think it is important, when we talk about the jury right, the jury right is not simply a right to stand in front and tell 12 people. The jury right implies, and this court has actually said that it implies certain things. A jury pulled from the community, that you have a right that will be a fair cross-section, that you have a right to participate in the jury system. That's all in the Robertson case. And Mr. Swan certainly was misinformed about what the jury right includes. Can I just return to the questioning that Judge Moritz, it still seems like there's still a loose thread here. So, we had the pro se letter, then there was a motion, then there was a hearing, and the statement about the composition of the jury came up at the hearing. And then there were closing arguments at the hearing, but how do we close this circle of whether Mr. Swan actually relied on that statement in making that decision? So, first off, I'm not sure that strict reliance in the fraud sense is what we're looking for. What we're looking for is whether his waiver of his jury right was knowing and voluntary. He was told this information, which I think we can all agree is mistaken information. That assertion about how the jury would be prepared is not correct. And it's not correct on a very important issue. What he does say in his testimony is he's concerned about the jury. He's concerned about the jury not believing him. So, in the context, and again, I want to think about this from the defendant's point of view. So, that's what we're asking about. Was this a knowing and voluntary waiver? He believes he's innocent. He says, this didn't fall out of my pocket. It's not mine, but the police are saying it was mine. It didn't fall out. And his trial counsel is saying, well, this is going to be rough. People believe the police, et cetera. In that overall package, the information that this will be an all-white jury, that we're still going to call the minorities, is reasonable. Like if you were in a fraud case, you would call that reasonable reliance, I think. And it is material. In a fraud case, you would call that material. It certainly could make a very important difference to know that. To have that piece of information would make a great deal of difference. And in addition, he expresses that he is concerned about the jury believing him and the prospects of that balance. Given all that, there's not a testimony where Mr. Swan says, I did this because my counsel told me this day. But I don't think that that's what this court needs. Could I shift gears just a bit? This is a question I've been puzzling over, so I hope you can help on it. So we have this case called Worthen v. Meacham. I assume you're familiar with that. And at some point in that decision, we said that when an involuntary misclaim rests on the faulty legal decisions or predictions of defense counsel, the plea will be deemed constitutionally involuntary only when the attorney is held to have been constitutionally ineffective. I guess my question to you is, does that mean that Mr. Swan had to show ineffective assistance of counsel under the Strickland test? And if he does need to do that, did he do that? So, no, it does not mean that he needs to do that. I think that the facts here would show ineffective assistance. However, I want to be very clear, this court has said repeatedly that ineffective assistance should not be brought under active appeal, and Mr. Swan doesn't wish to find himself precluded in a collateral attack if he needs to make that. Because there are other problems in his counsel's representation from trial counsel. But the claim here is not about a faulty legal decision. It's not, you know, I assessed, I guess, I gauged wrong what is the outcome of a sentence or something. It is a simple and plain misstatement of fact. Well, so it would be, under the language from this case, a faulty prediction. It is, the statement embodies both a prediction that the prosecutor will do that and a statement that they're allowed to do that. That is how it works. And that is the incorrect statement, that it is even allowed to happen. This court, and we've cited multiple cases of this in our reply brief, this court has, on multiple occasions, characterized, analyzed misstatements, misrepresentations by trial counsel separately from ineffective assistance in this kind of case. Well, I just want to make sure I'm understanding. I thought I heard something in the course of that answer about ineffective assistance on collateral review. And Worthen was a habeas case. Is that how you would distinguish that case? That's not what I'm saying, although I would wish to reserve the rest of my time for rebuttal, so if you don't mind, I'll answer that question quickly. Sure. No, I'm simply saying that the opening brief makes very clear that we're not pressing an ineffective assistance claim here, and we're not doing that because we don't wish to have that decided against us, because there is much more to say on that claim. Thank you. Thank you. Thank you. Counsel. May it please the Court. My name is Allison Christian, counsel for the appellee. I will explain today why this court should affirm the decision of the lower court to deny Mr. Swan's motion to withdraw his guilty plea. The district court's ruling should be affirmed for three reasons. First, Mr. Swan cannot show that the district court acted unjustly or unfairly. Second, Mr. Swan's plea was knowingly and voluntarily entered. And third, Mr. Swan's claims of factual innocence are not credible. To my first point, Mr. Swan cannot show that the district court abused its discretion. He cannot meet the burden that the district court acted unjustly or unfairly in considering the factors at the district court level. Pursuant to you- Do you concede that Mr. Armenta did acknowledge in his cross-examination that he did tell Mr. Swan that the jury would be called a minorities? Yes, Your Honor, I do concede that he did say that in his cross-examination at the motion to withdraw hearing. However, pursuant to- And isn't it worse than that in the sense that, according to his counsel, it was at that point, it was at that very point when he said, it will be called a minorities, your jury will have no one other than- it will be compromised of no one of minority color. He said, and what did he decide to do then? He said, Mr. Swan at that point paused, and then he told me he wanted to enter a plea. Why doesn't his own prior counsel's testimony establish that this was involuntary, that he was coerced, when his counsel basically- he didn't say this was the reason, but he certainly said, I told him this, I did this, I showed him the video, and then I said this, and then he paused and said, I'm going to plead. Why don't we have enough there? Your Honor, I think this goes to the point that you made with the appellant just a moment ago about the fact that we have his pro se motion to withdraw, we have the counsel- But he doesn't realize at that point. Sure, Your Honor. His pro se, he doesn't know that that was improper or that that could be coercion. Sure. His new counsel doesn't know that this happened. Yes. In addition to that, though, we have the counsel brief that he filed. We have the hearing where Mr. Swan was asked directly, why did you plead guilty? And the crux of that hearing, when you look at the transcript, it focused on the videos. It was focused on the evidence. He said that he pled guilty because of- he pled guilty, but then he wanted to withdraw his plea because when he got a new attorney, his attorney showed him the duration of those videos. That was his point. Why does it matter why he pleaded guilty? It's a binary question. His plea was either knowing, involuntary, or a blessing. If he thought incorrectly that there was no such thing as fancy or flowers and that Mr. Armenta's advice had gone unchallenged, that the jury would be cold of anybody of his color, that he would be- that this would not be a knowing plea, and so he would be making this binary decision whether to plead guilty or not guilty based on a false set of information. So why is reliance important, and why isn't opposing counsel's distinction more than versus Meacham in terms of ineffectiveness accurate, since that's a Sixth Amendment claim and we're talking about a due process claim? Your Honor, I'd like to take your question into two parts, if I may. First, whether the defendant's plea was knowing, well, we can't ignore this court's jurisprudence previously  In his prior federal trial, was that- how many white people, how many black people were on that jury? We don't know, do we? Your Honor, that's not in this record, no. So, yeah, he had a lot of experience, and his experience, as opposing counsel pointed out, may have corroborated this misinformation from Mr. Armenta. Your Honor, perhaps. He may have seen a lot of white people and no black people on his prior federal jury and thought it was perfectly correct what Mr. Armenta had said, right? Your Honor, perhaps that's the case. The record's unclear on that point of what happened in his prior case. But we can't ignore the fact that he did have two jury trials, one of which in the same district, as Your Honor pointed out, that this case occurred in. And looking at whether the plea was voluntary, we have to address the standard brought up by opposing counsel previously. So, opposing counsel would say that the Strickland v. Washington standard does not apply. The United States would advocate that it does under Worthing v. Meechan. And looking at the Strickland v. Washington test, however, we don't need to consider, under the first prong, whether the counsel's performance was deficient in making that statement, because we know from the record, under the second prong, that but for that statement, he would not have pleaded guilty. He still would have pled guilty in light of the record. Could I just, on what standard applies, in reading the hearing transcript, it appears that the parties, Mr. Autry, the AUSA, the court, considered Yazzie the governing standard, and I didn't see any discussion of Strickland. So, isn't it just the multi-factor Yazzie standard? And I don't see any Strickland factor under Yazzie. Your Honor, under whether the governing standard for withdrawal of a guilty plea are the Yazzie factors, those seven factors that were considered at the district court level, and the United States would advocate that in considering those factors, the district court did not abuse its discretion. However, within whether a plea is knowing and voluntary, that is reviewed under the de novo standard, and that is when the Strickland standard comes into test. When the defendant raised the claim, it is counsel made the statement. Well, other than Worthing, which was a collateral attack, it wasn't a direct appeal, have you got any case on direct appeal where there's been a denial of a motion to withdraw, there's an appeal on abuse of discretion, and an appellate court has applied Strickland? Not a 2255, not a 2254, just a direct appeal on a motion to withdraw. Your Honor, I don't. However, I would posit that even if you take this case today under the material misrepresentation standard as opposed to the Strickland standard, that the United States still prevails. However, because this, as evidenced by the record, was not material to the defendant in making his guilty plea, in deciding to go to trial or deciding to plead guilty, as evidenced by the record, what was material to him perhaps were the videos, but what was not material, what had not been raised at any point until the motion to withdraw hearing on Cesar Armante's direct... Well, when you say not raised, maybe not in the letter, maybe not in the motion, but we have evidence that it was raised with Mr. Swann by Mr. Armante when he made this prediction. So in the face of that misinformation about minorities being culled from the jury, how can the plea be knowing and voluntary? In the face of misinformation. Your Honor, look at Mr. Swann's own testimony at the motion to withdraw hearing. On page 9 of that transcript, the AUSA asked him, why did you, or perhaps it was his counselor, why did you file that motion? And he said, I didn't see any evidence. I looked at the evidence and then I put in the withdrawal. The reason that he decided to withdraw his guilty plea, the entire underlying factor of those proceedings at the district court level were related to his seeing the full videos. And, of course, his seeing the whole video was part and parcel of his counsel telling him, the jury's going to believe the police officers, and oh, by the way, you're going to have an all-white jury and the prosecutor's going to cull out all... You can't remove that from the video. That was part of what his counsel advised him in that same session. And his own counsel testified. He heard that and he made his decision. He paused, he made his decision. I guess that's what I was getting to before is, why do we need any more than that? Why do we need any more than his own counsel, if not explicitly, certainly implicitly saying, this was part and parcel of his decision to plead. What I told him, he then made his decision. Why do we need his own testimony on this when we've got his counsel? Your Honor, it's not to say that we need, per se, his testimony about it, but I think it's telling. We can't ignore that. When he was asked the open-ended question of, why did you want to withdraw your plea, he never said anything about it. And then, even after the fact, on the motion for reconsideration that was argued by his counsel at sentencing, after the statement had been discussed at the motion for withdrawal hearing, there was no mention of the statement at that motion for reconsideration. After the motion for reconsideration, all that was mentioned were those videos and then the Supreme Court's decision in Bruin, which is not at issue here today. But there was no mention of it. If something was truly material to the defendant, his counsel at that point they knew about it, would have brought it up at that motion to reconsider. You're bringing up two different threads. One is preservation in terms of what he testified, in terms of what he relied on. Isn't, for reliance, isn't that the wrong question? Because it's counterfactual. You say, Bob Becker, why did you plead guilty? Well, I pleaded guilty because, based on the facts that were known to me at that time. Now, if somebody said, well, there was this other fact that you did not know about. In other words, you didn't know X existed. What would you have done? Well, it's a hypothetical. Based on accounts, sort of like we often ask hypothetical questions that are counterfactual. Well, here you're asking for a historical fact. What would you have done if the world had been different than you had envisioned on the day that you were arraigned? Well, who the heck knows? And so, asking why he did something on a counterfactual set of assumptions, why isn't that the wrong question to ask? Your Honor, I think that's a good point in that when you're looking at whether a plea was knowing and voluntary, I would advance that it needs to be an objective inquiry. And that's why the Rule 11 colony exists. That's why all of these different things exist to ensure that pleas are knowing and voluntary, because if you look to exactly what he was thinking at the time, well, we don't know, as you just pointed out. We don't know what he was thinking. Well, we know what he was told, though. In other words, but why doesn't that cut against you from an objective reasonableness standard for materiality? If your lawyer tells you X, and X is just flat-out wrong, why isn't it a fair inference for any jurors? Or why would it not be anything other than an inference to say, well, that just wasn't important, that the jury was going to be strict with anybody of his rights? From an objective reasonableness standard, wouldn't this clearly be material? Your Honor, in considering your question, I think we have to look at, objectively, at the record of what we do know. And I think it supports the government's argument that we do know, even after he made the statement, he didn't raise it. He didn't raise it in his motion for reconsideration. The first time that was ever even mentioned was by Mr. Armenta in an open-ended question on direct exam, and then on cross-exam and in closing argument, that got taken into a different direction. Mr. Armenta's exact words were, I've told you because we're giving the officers that were present the body camera footage and that jurors would be compromised if no one had been born of color. And then it became into the Colleen thing on the cross-examination and then in the closing argument. But even after the fact, on reconsideration, it was never mentioned. And I think that's telling of what we do know. Are you obligated to? I mean, it comes out at the hearing. If you accept that this council is testifying essentially that this was a reason for the plea, it's argued in the closing, there's no obligation to ask for a re-hearing. Well, certainly not, Your Honor. But the fact that he did and failed to mention it is telling. I don't think that this court can ignore that. Why isn't it troubling, though, that if at some point the question was Mr. Swan being shown video evidence and he's got to make some assessment about the evidence, but the backdrop in making that assessment is the fact that his counsel has told him that he's got an all-white jury culled of minorities. It's there. And it informs an assessment of what's the jury going to do with this evidence. I mean, how can you not factor that in in evaluating this issue? How can we not factor it in in evaluating the issue? Your Honor, of course the United States is not condoning or agreeing with such a statement. I didn't suggest that. But it was made, and it was made in the context of the other information that Mr. Swan was considering. And it isn't as if you compartmentalize. It's all there. Your Honor, I think I'm almost out of time. Please do. Something to remember here when you're looking at the statement and looking at the analysis is even though his counsel testified that he made that statement, that still does not rise to the level of coercion to render his plea involuntary. If you look at the Jackson v. Luoma case in the Eastern District of Michigan cited in our briefs, there, although it's of course persuasive, his counsel coerced him into pleading guilty by saying he would have a racially biased jury and be found guilty. However, the court there found that there was no coercive tactics, there was no strong army, and so too here. Mr. Armenta, in light of saying all of those things, still said, I'm ready to pursue to trial. And are you guilty? There was no evidence of coercion or strong army to render that plea involuntary. If there are no further questions, I thank you for your time. Thank you, counsel. Judge Matheson, I take your point about the habeas cases now, right? Given what this court has said of bringing ineffective assistance claims on direct appeal, it would be inconsistent to require us to make that showing in the context of withdrawing a plea. I will say though, if you were going to do it, and I don't think you should apply the Strickland standard, but if you were, what would happen? Is there any reasonable counsel who would have said this? No. That said this thing about calling it minorities? No. There's no question that falls below the standards. And is there a reasonable probability, the government wants to talk about whether there's but-for, would he have pleaded guilty otherwise? The question would have been under Strickland, is there a reasonable probability? Okay, let me just jump in there, because wasn't there evidence that after Mr. Armenta showed in the video and talked about the case that Mr. Swan did say to Mr. Armenta that the ammunition was his and that he had it in his possession and that it fell out of his pocket? Why doesn't that counter all of this to show that his plea was knowingly unfair? I'm about out of time, but I do want to answer that question, because it's an important one. Please do. The context matters. He said all along, he receives the information about the all-white jury, and he says, okay, now I want to plead guilty. At that point, he doesn't say that it was his and he's guilty. He says, I want to plead guilty. And then his lawyer says, oh, I won't let you do that, unless you tell me you're guilty. Okay, I'm guilty, like it was mine. That context shows you, and you're right, Judge Morris, that shows you the reliance right there, and that undermines the credibility of his, that undermines his, Mr. Armenta's taking it as gospel that, oh, he must be guilty because he just said that to me. Given the context, he was saying that because that's what he needed to say to get his counsel to do what his preferences were. Thank you. Okay, thank you. Judge Matheson, do you mind if I, if I ask one additional question, even though Helen is out of time? I think that would be fine. Okay, thank you. Mr. Bradley, I just want to ask you, you know, you had alluded in your opening presentation about preservation, and I'll just tell you that is my primary concern on your claim. I think you make a superb argument, both in your briefing and orally, but my understanding of preservation is essentially, you know, whether or not Judge Bryant was fairly alerted to this argument. And if we sort of discuss, I think it's fair to say that it wasn't in the pro se motion for reasons that are understood. It wasn't in the, in the counsel motion. It wasn't, even though you point out that it was two lines in David Offrey's closing arguments, not about Cole, but about who's, and what Gary's going to believe on 73 and 77. There wasn't any simple little briefing, and so I am concerned about whether or not Judge Bryant was fairly alerted to an argument that it was not a knowing plea because there was a violation of facts, and now the appellee has arguably forfeited the forfeiture, because I don't know that they trace forfeiture, but we, sua sponte, consider forfeiture often. We did, the same panel did in a case called U.S. v. Rotoball, and one of the things that we considered in Rotoball was the impact of the appellant's failure to work that issued the district court of the issue, and this whole discussion about reliance makes me think it was very prejudicial just to the, to the adjudication of the claim that Judge Bryant never had an opportunity to consider whether reliance is required, whether we apply Worthen v. Meacham, whether we don't, and if we don't have any input from Judge Bryant on that, and frankly, we don't have any briefing from either of the parties other than Worthen v. Meacham whether reliance is required, and so we're going to be, you know, going without the benefit not only of Judge Bryant's counsel, input, but frankly, without the input of anybody in the case citing us anything other than Worthen on whether or not reliance is required. Why, why shouldn't we, under those circumstances, say it was forfeited? So, I agree with you that the government has forfeited that issue, but I take your point that the court can consider that. In this context, the, the notion that reliance is, is required is not something actually that the government has even put forth. They've said that it is, that simply that it is strickland, which we have briefed, and so that's been, you know, under this court's standards, this whole issue of forfeiture kind of disappears when both sides have had the opportunity to brief that, which we have, we have both briefed whether strickland is the right standard. This reliance question that Judge Matheson asked, I don't recall seeing that come up in the parties briefs at all, so that, you know, this is, the court doesn't even need to address that question because the government has not asked it. In terms of whether Detroit was alerted, I, I have to be honest with you. When I read that message in Mr. Armenta's cross-examination, it just, alarm bells started going off for me. It doesn't take a whole lot for me to,    went very wrong. And then, you know, counsel raised it in the closing argument. I, I, I, I, I, I, I, I, I would, I would think that in that context, Judge Wright doesn't need a lot of, doesn't need an elaborate briefing to know that there is a concern that Mr. Swan was misinformed about the Detroit trial. Thank you. Mr. Christian, do you want 30 seconds? We,  we let him go on for a while. I just want to try to even things up. You're, thank you. Well, thank you both for your time. Thank you. No problem. Thank you for the arguments this morning. The case will be submitted and counsel are excused.